UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-22208-CIV-MORENO

CREARY VERNON KEMIEL ROBINSON,

      Petitioner,

vs.

UNITED STATES OF AMERICA,

      Respondent.

_____/

**ORDER OVERRULING OBJECTIONS TO THE REPORT AND RECOMMENDATION,
ORDER RULING THAT NO CERTIFICATE OF APPEALABILITY ISSUE,
ORDER GRANTING LEAVE TO AMEND SECTION 2255 MOTION, AND
ORDER DENYING REMAINING MOTIONS**

THIS CAUSE came before the Court upon the Eleventh Circuit's Limited Remand Order **(D.E. 28)** and the Order of Dismissal **(D.E. 37)**, following this Court's Order of Indicative Ruling **(D.E. 33)**.

The Limited Remand Order required this Court to make the initial determination on whether a certificate of appealability should issue as to the Court's prior denial of the Petitioner's Motion to Reopen Proceedings. Prior to denying the Motion to Reopen, and only after the Court did not timely receive the Petitioner's Objections to the Magistrate Judge's Report and Recommendation, the Court adopted the Report and Recommendation, denied the Petitioner's Section 2255 Motion, and ruled that no certificate of appealability should issue.

Upon close review of the record following the Eleventh Circuit's Limited Remand Order, the Court found that the Petitioner's Objections to the Report and Recommendation appeared to have been timely filed, and thus were entited to review on the merits. Also, during the limited

remand period, the Petitioner filed a Motion to Amend, which sought to add a new claim for ineffective assistance of counsel on grounds that his attorney failed to advise him as to the immigration consequences of pleading guilty. As part of the Limited Remand Order review, the Court determined that, despite a thorough plea colloquy, the Court failed to advise the Petitioner about the immigration consequences of his guilty plea.

Based on these findings, the Court issued an Indicative Ruling asking the Eleventh Circuit to relinquish jurisdiction so that the Court could make a finding that the Objections were timely filed and then give the Objections the merits review they deserved. The Indicative Ruling further stated that the Court was inclined to grant the Motion for Leave to Amend to allow the Petitioner to add his new claim for ineffective assistance of counsel. The Eleventh Circuit subsequently relinquished jurisdiction so that this Court could address the substantial issues raised in the Indicative Ruling.

For the reasons explained below, the Court finds that the Petitioner's Objections to the Report and Recommendation were timely filed. Upon a merits review, however, the Court finds that the Objections **(D.E. 16)** are unpersuasive, and they are thus **OVERRULED**. The Court also finds that no certificate of appealability shall issue as to the denial of the Petitioner's Motion to Reopen the Proceedings. Accordingly, the Report and Recommendation **(D.E. 12)** remains **AFFIRMED** and **ADOPTED**. As to the Petitioner's remaining motions, the Court **GRANTS** the Motion for Leave to Amend **(D.E. 29)**, and **DENIES** all other motions **(D.E. 32, 35–36)**.

## BACKGROUND

In June 2017, the Petitioner commenced this case by filing a Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. Section 2255. (D.E. 1.) On January 11, 2018, Magistrate Judge White issued a Report and Recommendation, which recommended that the District Court deny the Petitioner's Section 2255 Motion because his claims for ineffective

assistance of counsel lacked merit, and further recommended that no certificate of appealability issue because the Petitioner failed to make a substantial showing of the denial of a constitutional right. (D.E. 12 at 9–14.)

On January 30, 2018, having not received objections to the Report and Recommendation from the Petitioner, and having agreed with Magistrate Judge White's well-reasoned analysis, this Court adopted the Report and Recommendation in full and ruled that no certificate of appealability issue. (D.E. 13.) The same day, the Court issued Final Judgment in favor of the Defendant and closed the case. (D.E. 14.) It was not until three weeks later, on February 20, 2018,[1] that the Court received a letter filed by the Petitioner that asserted objections to the Report and Recommendation. (D.E. 16.)

Then, in July 2018, the Petitioner filed a Motion to Reopen Proceedings on grounds that the letter containing his objections was timely filed. (D.E. 19.) The Court denied the Petitioner's Motion to Reopen, but failed to rule on whether a certificate of appealability should issue. (D.E. 20.) The Petitioner appealed that order (D.E. 21), and the Eleventh Circuit later issued a Limited Remand Order that instructed this Court to make the initial determination on whether a certificate of appealability should issue as to this Court's denial of the Petitioner's Motion to Reopen. (D.E. 28 at 2–3.)

## DISCUSSION

As discussed above, after a close review of the record following the Limited Remand Order, the Court found that the Petitioner's Objections to the Report and Recommendation

---

[1] Even though the docket reflects that the Objections were filed on February 28, 2018, this was simply the day the Clerk of Court uploaded the Objections to the docket. The Objections are treated as being filed on February 20, 2018 under the prison mailbox rule and under the presumption that the Petitioner submitted his Objections to prison officials for mailing on the same day they were signed and dated by him. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (ruling that a *pro se* prisoner's filing is considered filed "at the time [the] petitioner delivered it to the prison authorities for forwarding to the court clerk").

appeared to have been timely filed. The Court will now address the Objections on the merits, and then turn to the Petitioner's remaining motions.

I.  **OBJECTIONS TO THE REPORT AND RECOMMENDATION**

   A.  **THE TIMELINESS OF THE OBJECTIONS**

Whether the Petitioner timely filed his Objections in this case depends on the date the Report and Recommendation was *served* on the Petitioner. *See* S.D. Fla. Local Magistrate Rule 4(b) ("Any party may object to a Magistrate Judge's proposed findings, recommendations or report . . . within fourteen (14) days after being *served with a copy* thereof. . . .") (emphasis added). In response to the Petitioner's Objections, the Defendant argued the "objections were due on January 26, 2018" because the Report and Recommendation was "entered on January 11, 2018," and thus the Objections dated February 20, 2018 were untimely filed. (D.E. 17 at 1.) This position seemingly fails to appreciate that the Petitioner cannot receive electronic service of court filings while incarcerated. Without electronic service of the Report and Recommendation, the Petitioner's deadline to file his objections never could have been January 26, 2018 because he could not have been "served with a copy" of the Report and Recommendation on January 11 or 12 of 2018.

Through multiple filings, the Petitioner argued that his Objections, signed and dated on February 20, 2018, were timely filed because he was first served with a copy of the Report and Recommendation on either February 7 or 8 of 2018, and thus his deadline to file objections was fourteen days later on February 21 or 22.[2] In these filings, the Petitioner explained that his

---

[2] Four months after the Report and Recommendation was adopted, the Petitioner also filed a letter, styled as an "Untimely Notice," that argued for the first time that he did not receive a copy of the Report and Recommendation until February 7, 2018. (D.E. 18 at 1.) In the Motion to Reopen Proceedings, filed the following month, the Petitioner argued that his Objections were timely filed because it was not until February 8, 2018 that he received a "response from the United States District Court stating that [his] objection to [his] 2255 motion . . . was untimely."

attempts to obtain a copy of his mail log from the department of corrections—which would show the date and time he received the Report and Recommendation and thus show that his Objections were timely filed—were unsuccessful. (D.E. 18 at 1; D.E. 19 at 1–2.)

On this record, the Court cannot conclusively say when the Petitioner was served with the Report and Recommendation. But in view of the Eleventh Circuit's strong preference that cases be resolved on the merits, the Court will assume that the Petitioner was served with the Report and Recommendation on either February 7 or 8 of 2018. In either case, the Objections filed on February 20, 2018 would be timely. Now the Court will address the Objections on the merits.

### B.  THE MERITS

The Petitioner's Section 2255 Motion asserts two claims: (1) that the Petitioner wanted to go to trial but his attorney erroneously told him it was too late, and that had the Petitioner known it was not too late to opt for a trial, he would not have pleaded guilty[3]; and (2) the Petitioner gave his attorney information to contact a witness that could prove the Petitioner's place of residence (and thus his innocence), but that his attorney never contacted the witness. (D.E. 1 at 4–6.)

Upon reviewing the Motion, Magistrate Judge White found that—in contrast to the Petitioner's statements made under oath during his change of plea and sentencing hearings—the Petitioner's general and conclusory assertions failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness, or that the Petitioner suffered prejudice as a result of his counsel's performance. (D.E. 12 at 9–13.)

---

(D.E. 19 at 1.) Although this argument was not precise as to what "response" he received from the "United States District Court," upon liberally construing the Motion, the Court now interprets this Motion as having argued that the Petitioner did not receive the Report and Recommendation from the Magistrate Judge until February 8, 2018.

[3] Although the Section 2255 Motion lists these arguments as two separate claims, they really are a single claim for ineffective assistance of counsel. For purposes of this Order, then, the Court will consider them as one claim. This reading is also consistent with Magistrate Judge White's analysis in the Report and Recommendation. (D.E. 12 at 5–6, 9–11.)

The Objections, however, do not appear to challenge the legal analysis in the Report and Recommendation related to the Petitioner's admissions made under oath. Instead, the Objections inject several new claims and factual allegations.

### 1. New Claims and New Factual Allegations

It is well established that the Petitioner "cannot raise new arguments or allegations in his objections because this deprives the other side of a fair chance to respond." *Murphy v. United States*, No. 14-20431-CIV, 2015 WL 3607287, at *4 (S.D. Fla. June 8, 2015); *see also Yanes v. United States*, No. 14-21890-CIV, 2015 WL 12764951, at *4 (S.D. Fla. Aug. 26, 2015) (declining to consider claim "inappropriately asserted for the first time in Objections") (citing *Quinones–Correa v. Wells*, No. CV 311-050, 2012 WL 2872878, at *1 (S.D. Ga. July 12, 2012) (refusing to consider "new contentions and allegations" raised in objections because allowing the petitioner to do so would "frustrate systematic efficiencies")). On this basis alone, the Court could overrule the Objections in their entirety.

The Eleventh Circuit has ruled, though, that district courts have discretion when deciding whether to consider new arguments and facts that were not first presented to the magistrate judge. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Although some of the new factual allegations in the Objections actually relate to the ineffective assistance of counsel claims advanced in the initial Section 2255 Motion, several new factual allegations appear to assert a new claim for malicious prosecution. Given the unique procedural history of this case, the Court will exercise discretion to consider, as part of the merits review, only the new factual allegations relating to the ineffective assistance of counsel claims.[4]

---

[4] To be clear, the Court will not exercise discretion to consider the Petitioner's new claims that: (1) prosecutors with competent knowledge maliciously presented the Petitioner's state case to a federal agent and that federal prosecutors in turn, with knowledge, wrongfully and maliciously prepared an indictment furnished with false information; and (2) the Petitioner's

## 2. Ineffective Assistance of Counsel Claims

The thrust of the Objections is that the Petitioner's attorney rendered ineffective representation during the guilty plea stage. To establish ineffective assistance of counsel, the Petitioner must show deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the first prong, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To establish prejudice, the Petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Where, as here, the Petitioner argues that his guilty plea was based on his attorney's allegedly deficient performance, the Petitioner can show prejudice only if "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Upon a *de novo* review of the Objections under 28 U.S.C. § 636(b)(1),[5] and liberally construing the Petitioner's filings, the Court finds that the Petitioner's allegations fail to

---

state case was refiled and furnished with false allegations of new evidence, which really was old evidence refiled under a new information, and that an illegal arrest warrant was obtained through lying under oath. (*See* D.E. 16 at 2.) These claims were never asserted in the intial Section 2255 Motion, and therefore were not considered by the Magistrate Judge. The Court thus declines to consider them now.

[5] A *de novo* review is only required where an objecting party files "a proper, specific objection" to a factual finding contained in a report and recommendation. *Balbin v. Concepcion*, No. 1:18-CV-20875-KMM, 2019 WL 5725471, at *2 (S.D. Fla. Sept. 26, 2019) (quoting *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (noting "[i]t is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review)).

Here, it appears that none of the Objections are sufficiently specific to findings made in the Report and Recommendation. As discussed above, instead of objecting to the legal analysis and factual findings, the Objections inject new factual allegations not previously asserted in the initial Section 2255 Motion. Thus, the Objections are not legally entitled to *de novo* review. Nevertheless, because of the unique procedural history of this case, and because the interests of justice will be served, the Court will consider the new factual allegations in its *de novo* review.

demonstrate that his attorney's performance fell below an objective standard of reasonableness, or that the Petitioner suffered prejudice as a result of the allegedly deficient performance.

### a. **Inducement to Plead Guilty (Claim 1)**

Throughout his Objections, the Petitioner maintains that his attorney induced him to plead guilty. The Objections assert that the Petitioner repeatedly told his attorney that he had evidence to support his innocence and that he wanted to go to trial. The Objections further claim that the Petitioner's attorney advised him not to go to trial (and risk receiving a 30 year sentence) because the Petitioner had a prior record and the government witness did not. The Objections also assert that the Petitioner's attorney induced him to sign the factual proffer, and that after signing it, the attorney informed the Petitioner that it was too late to go to trial despite the Petitioner's desire to do so.

In short, the Court finds that these conclusory allegations fail to demonstrate either deficient performance or prejudice. While a conviction based on a guilty plea is open to collateral attack, plea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). The Supreme Court has explained that although Section 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." *Id.* at 71–72. For this reason, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are

wholly incredible." *Id.* at 74.

Here, the Petitioner's after-the-fact conclusory allegations that he did not want to plead guilty are overwhelmingly rebutted by his own admissions, made under oath, during the plea colloquy. *See generally United States v. Robinson*, Case No. 16-cr-20314-FAM-1, D.E. 48 at 5–25 (S.D. Fla. June 29, 2017). During the plea colloquy, the Court asked the Petitioner: (1) whether anyone forced or threatened him to plead guilty; (2) whether he discussed with his attorney the possible defenses, consequences of a guilty plea, the Sentencing Guidelines, the minimum mandatories, and what could happen in state and federal court; (3) whether he was happy with his attorney's representation; and (4) whether he understood that he was giving up his right to trial, his right to remain silent, his right to testify, and his right to have the prosecutor prove the case beyond a reasonable doubt to a jury. The Petitioner answered in the affirmative to each question. *See id.* at 5–13.

The Court also informed the Petitioner that he could not be sentenced to less than 5 years, which the Petitioner acknowledged he understood. *Id.* at 7–8.

After the government read the factual proffer into the record, the Petitioner made one correction through his attorney: that the apartment identified in the proffer "was not an apartment in his name" and "was registered in someone else's name." *Id.* at 16. The Court then asked the Petitioner if he "agree[d] with everything the prosecutor has stated about the guns and the drugs"; the Petitioner responded, "Yes, Your Honor." *Id.* In the next exchange, the Court explained that the Petitioner would be innocent if the hidden gun was not related to the drugs, and the Petitioner reaffirmed his decision to plead guilty:

> THE COURT: "[I]f it's a gun that was hidden that was not related to drugs, then you would not be guilty. Do you understand that?
>
> THE [PETITIONER]: Yes, Your Honor.

> THE COURT: Do you still want to plead guilty knowing that?
>
> THE [PETITIONER]: Yes, Your Honor.
>
> THE COURT: Okay. Do you understand there's no coming back from a guilty plea? Once you plead guilty, it's forever. You can't go back to jail and talk to your friends and they say, oh, you should move to vacate it. You withdraw it. Come on. Do you understand that?
>
> THE [PETITIONER]: Yes, Your Honor.

*Id.* at 17–18.

The Court then asked the Petitioner's attorney if he was satisfied that the Petitioner was entering the plea freely, voluntarily, and that he was competent to do so. *Id.* at 17. The Petitioner's attorney affirmed that he was satisfied, and also stipulated to the factual basis for the guilty plea. *Id.* at 17–18. Sensing a "little reluctan[ce]" from the Petitioner, the Court allowed the Petitioner to confer with his attorney, and his attorney explained to the Court that the Petitioner's reluctance about pleading guilty in federal court derived from confusion and dissatisfaction with having litigated the same case in state court during the year preceding involvement by the federal government. *Id.* at 18–22. The Petitioner's attorney further explained that "the only reason we're here is because . . . somebody believed [the Petitioner] was a convicted felon and charged a 922(g)" in federal court. *Id.* at 23. The attorney stated that after the Petitioner was able to explain to the Magistrate Judge that the Petitioner was not a convicted felon, the Petitioner could not get it out of his mind that he never should have been in federal court in the first place because of the small amount of drugs. *Id.* The attorney further explained that the Government agreed that the Petitioner was not a convicted felon, and so they dismissed that count. *Id.* In short, it was "just a very difficult thing for [the Petitioner] to accept . . . ." *Id.*

Following this explanation, the Petitioner pleaded guilty:

THE COURT: Okay. How do you plead to possessing these firearms in furtherance of the drugs, guilty or not guilty?

THE [PETITIONER]: Guilty.

THE COURT: Are you sure?

THE [PETITIONER]: Yes.

THE COURT: Any questions I have forgotten to ask?

[THE GOVERNMENT]: No, Your Honor.

THE COURT: I find that your guilty plea is freely and voluntarily entered, you're intelligent and alert, represented by competent counsel with whom you have expressed satisfaction; that there is a factual basis upon the proffer of the prosecutor and your acknowledgement of such. Thus, I accept your guilty plea, find you guilty, [and] adjudicate you guilty . . . .

*Id.* at 24–25.

In this Circuit, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (citation omitted); *see also Krecht v. United States*, 846 F. Supp. 2d 1268, 1280–81 (S.D. Fla. 2012) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.") (citations omitted).

Here, the Court finds that the Petitioner's "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal," as are his contentions, which, in the face of this record "are wholly incredible." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting *Blackledge*, 431 U.S. at 74). The Court also finds that the Petitioner's new factual allegations in his Objections fail to satisfy his heavy burden of demonstrating that his statements during the plea colloquy—that he was happy with his

attorney's representation, that he was guilty, and that he wanted to plead guilty—were false. Therefore, the Court cannot conclude that the Petitioner's attorney induced the Petitioner to plead guilty over the Petitioner's objections, thereby rendering ineffective representation.

Also, even if the Petitioner received ineffective representation, he cannot demonstrate prejudice. The Court noted at the sentencing hearing that the Petitioner was facing a sentence that ranged from the minimum mandatory sentence of 5 years to a maximum sentence of life imprisonment. *See Robinson*, Case No. 16-cr-20314-FAM-1, D.E. 49 at 4 (S.D. Fla. June 29, 2017). After outlining the Petitioner's extensive criminal history, the government recommended a 5 year sentence—the mandatory minimum sentence—because the Petitioner accepted responsibility and because 5 years would be a significant time in prison relative to the Petitioner's prior prison time. *Id.* at 5–7.

When the Petitioner's attorney took the podium, the Court asked why the Petitioner should not receive more than the mandatory minimum of 5 years. *Id.* at 8. The Petitioner's attorney argued that the Petitioner had a "very good family," that he was a good father that spent time with all of his children, that his last arrest was in 2010, and that he was still facing charges in state court for the same crime. *Id.* at 8–11. After hearing from both sides, the Court gave the Petitioner a 5-year mandatory minimum sentence. *Id.* at 16.

In short, the Petitioner's "bare allegation that [he] would not have pleaded guilty is insufficient to establish prejudice." *Roach v. Roberts*, 373 F. App'x. 983, 985 (11th Cir. 2010) (citation omitted). Furthermore, the Petitioner's conclusory assertions have not demonstrated that his sentence "was increased by the deficient performance of his attorney or, in the converse, that his sentence would have been less harsh" than the *mandatory minimum* sentence he received. *See de la Sota-Rivera v. Jones*, No. 17-60066-CIV, 2018 WL 9649832, at *24 (S.D.

Fla. July 9, 2018) (citations omitted), *report and recommendation adopted*, 2018 WL 9649793 (S.D. Fla. Aug. 21, 2018) (overruling objections). On this record, then, the Court cannot conclude that the Petitioner suffered any prejudice from his attorney's allegedly deficient representation.

### b. Inadequate Investigation (Claim 2)

The Objections also assert that the Petitioner's attorney failed to contact a favorable witness that would support the Petitioner's contention that the residence where he was arrested was not his residence.

As to deficient performance, "there is no absolute duty to investigate particular facts or a certain line of defense." *Fugate v. Head*, 261 F.3d 1206, 1217 (11th Cir. 2001). Rather, "counsel has a duty to make *reasonable* investigations or to make a *reasonable* decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691 (emphases added). This is because finite resources of time and finances make it unrealistic to expect counsel to investigate substantially all plausible lines of defense. *Gates v. Zant*, 863 F.2d 1492, 1498 (11th Cir. 1989). As such, it is no surprise that reasonably competent attorneys often must rely on their own experience and judgment, without the benefit of a substantial investigation, when deciding whether or not to forgo a particular line of defense. *Id.* Consequently, an attorney can render *effective* assistance "even though he decided not to pursue a particular line of defense without substantial investigation so long as the decision was reasonable under the circumstances." *Id.*

Here, the Petitioner's conclusory assertions fail to explain or show how his attorney's failure to interview a witness about the residence in question was unreasonable under the circumstances—particularly in view of the statements made under oath during the plea hearing. Thus, the Court finds that the Petitioner has not demonstrated deficient performance. And even

if the Petitioner did, he cannot show prejudice. After the government read the factual proffer into the record, the Petitioner made a single correction through his attorney: that the apartment identified in the proffer "was not an apartment in his name" and "was registered in someone else's name." *Robinson*, Case No. 16-cr-20314-FAM-1, D.E. 48 at 16 (S.D. Fla. June 29, 2017). The government did not object to the Petitioner's clarification. *See id.* So regardless of whether the witness was interviewed or not, the Petitioner's factual allegation was made on the record without objection from the government. Then, after the Petitioner's clarification was made on the record, the Court asked the Petitioner if he "agree[d] with everything the prosecutor . . . stated about the guns and the drugs." *Id.* The Petitioner responded, "Yes, Your Honor." *Id.* For these reasons, the Court finds that the Petitioner cannot demonstrate prejudice, and thus his second claim for ineffective assistance of counsel fails as well.

All together, the Objections to the Report and Recommendation are **OVERRULED**. The Report and Recommendation remains **AFFIRMED** and **ADOPTED**, and the initial Section 2255 Motion **DISMISSED**. Having considered the Objections on the merits, the Court also finds that no certificate of appealability shall issue regarding the denied Motion to Reopen.

The Court will now address the Petitioner's remaining motions.

## II. <u>REMAINING MOTIONS</u>

After the Limited Remand Order issued, the Petitioner filed a Memorandum of Law and Appendix in Support of an Amended Motion to Vacate Conviction **(D.E. 29)**, a Motion for Leave to Amend and/or Supplement his Motion for Certificate of Appealability **(D.E. 32)**, a Motion to Unseal Grand Jury Minutes **(D.E. 35)**, and a Motion to Compel Production of Grand Jury Material **(D.E. 36)**. The Court addresses each motion in turn.

A.   **MOTION FOR LEAVE TO AMEND INITIAL SECTION 2255 MOTION**

The Court will construe the Memorandum of Law as a Motion for Leave to Amend the Initial Section 2255 Motion. This Motion purports to add a new claim for ineffective assistance of counsel. Specifically, the Petitioner alleges that his attorney "did not explain nor review with [the Petitioner] the repercussions that pleading guilty would affect his immigration consequences," and that had his attorney or the Court advised the Petitioner that "by pleading guilty he would be deported, he would not have pled guilty and would have proceeded to trial." (D.E. 29 at 14, 19–20.)

Under Federal Rule of Civil Procedure 15(a)(2), which applies to Section 2255 motions, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003). Rule 15(a)(2) further instructs that district courts should "freely give leave when justice so requires." *Id.* A district court abuses its discretion when it fails to provide adequate justification for the denial of a motion to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). One justification for denying leave to amend is that the new claim is barred by the statute of limitations (*i.e.* amendment is futile). *See Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993).

In the context of a Section 2255 motion, the statute of limitations to assert a claim is one year from the date the judgment of conviction becomes final. *See* 28 U.S.C. § 2255(f)(1). Here, because the Petitioner did not file a notice of appeal in his criminal case, his judgment of conviction became final on November 1, 2016.[6] Therefore, the statute of limitations for the

---

[6] Where no timely notice of appeal is filed, a judgment of conviction becomes final on the expiration of the deadline for filing a notice of appeal. *See Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000). Under Federal Rule of Appellate Procedure 4(b)(1), a criminal defendant must file a notice of appeal within 14 days after the entry of either the

- 15 -

Petitioner to assert claims in his Section 2255 Motion was November 1, 2017. Any claims asserted after this date are barred by the statute of limitations, unless the new claims "relate back" to the date of the original pleading. *See* Fed. R. Civ. P. 15(c).

Under Rule 15(c), "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." Fed. R. Civ . P. 15(c)(1)(B). The Eleventh Circuit has made clear that for a claim to relate back, "the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) (internal citations and quotations omitted).

Here, the Petitioner's new claim for ineffective assistance of counsel is that his attorney failed to advise him on the immigration repercussions of his decision to plead guilty. Because both the new claim, and the initial claim that the Petitioner was coerced into pleading guilty, arise out of the guilty plea stage and concern the advice the Petitioner received from his attorney as to the decision to plead guilty, the Court finds that the new claim "relates back" to the initial Section 2255 Motion. Therefore, the Motion for Leave to Amend is **GRANTED**.

B. **MOTION FOR LEAVE TO AMEND MOTION FOR CERTIFICATE OF APPEALABILITY**

Next, the Petitioner seeks leave to amend and supplement his motion for certificate of appealability concerning the claims raised in his initial Section 2255 motion because of three recent Supreme Court rulings involving the Sixth Amendment. First off, the Petitioner has received a merits review of his Objections. And after thoroughly reviewing the record and then

---

judgment or order being appealed, or the government's notice of appeal. Here, no appeal was filed by the Petitioner or the government, and the judgment of conviction was entered on October 18, 2016. *See Robinson*, Case No. 1:16-cr-20314-FAM-1, D.E. 46 (S.D. Fla., entered on Oct. 19, 2017). Therefore, the Petitioner's judgment of conviction became final on November 1, 2016.

*de novo* reviewing the Objections, the Court found no legal basis to reverse its initial ruling that affirmed and adopted the Report and Recommendation and ruled that no certificate of appealability should issue.

As for the cases cited in the Petitioner's motion, *Sexton v. Beaudreaux*, 138 S. Ct. 2555 (2018) and *Garza v. Idaho*, 139 S. Ct. 738 (2019) involved issues inapposite to this case: *Sexton* was about the deference federal courts must give to state court decisions when considering whether to grant *habeas* relief related to state court convictions, *see* 138 S. Ct. at 2559–60, and *Garza* concerned deficient representation related to signing a waiver of appeal, *see* 139 S. Ct. at 744.

And as for *McCoy v. Louisiana*, while the Supreme Court ruled that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty," that case was about concessions made by counsel to the jury during trial. 138 S. Ct. 1500, 1505 (2018). There, over the defendant's objections, his counsel explicitly told the jury during the opening and closing statements of the guilt phase, and then repeated again during the penalty phase, that the defendant committed the murders at issue in the case. *Id.* at 1506–07.

But, in the context of a collateral attack against a guilty plea, as is the case here, the Supreme Court has explained that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73–74. To that end, "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are

wholly incredible." *Id.* at 74 (citations omitted). As discussed above, the Petitioner's conclusory assertions are entirely rebutted by his statements made under oath during the plea hearing.

For these reasons, and because the Court gave the Objections the merits review they deserved, the Petitioner's Motion for Leave to Amend his Motion for Certificate of Appealability is **DENIED**.

### C. MOTIONS REGARDING GRAND JURY MATERIALS

Finally, the Petitioner filed a Motion to Unseal Grand Jury Minutes and a Motion to Compel the Production of Grand Jury Materials. The party seeking disclosure of grand jury material "must show a compelling and particularized need for disclosure." *United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004) (citation omitted).

In the first motion, the Petitioner requests grand jury minutes to see "the government's theory and evidence to convince indictment for counts that had not been accused by [the Hialeah Police Department] initially" in the state court case, which was related to the underlying federal case. (D.E. 35 at 1.) The Petitioner further argues this information is relevant to show whether he "understood the nature and accusations made against him" and "to make an intelligent plea of guilty." *Id.* This motion goes on to request affidavits from every court reporter who transcribed the grand jury proceedings, grand juror attendance records, dates the grand jury was in session, and the entire transcript of the May 6, 2016 session—"[e]xcept for fact witnesses who appeared before the grand jury . . . ." *Id.* at 2.

The second motion asks the Court to compel production of grand jury materials so that the Petitioner can establish a record to support his motion for a certificate of appealability on his ineffective assistance of counsel claims. The Petitioner requests all exculpatory material presented to the grand jury, all argument and explanation of relevant law that was presented to the grand jury, all documents related to the length of the term of the grand jury, petitions filed by

the United States Attorney to extend the grand jury, and transcripts of discussions by the government as to the progress of the investigation. (D.E. 36 at 1.)

In view of the Motion to Amend the Motion for Certificate of Appealability being denied, and the *de novo* review of the Objections, the Court finds that Petitioner's need for grand jury materials to supplement his Motion for Certificate of Appealability is not compelling. Even if the Petitioner's need was compelling, his broad (and questionably relevant) requests for information are not particularized. And finally, looking forward to the Petitioner's amended Section 2255 Motion, the grand jury materials have no relevance to whether the Petitioner was advised of the immigration consequences of his guilty plea. For these reasons, the grand jury motions are **DENIED**.

### III. <u>EVIDENTIARY HEARING</u>

In view of the Court granting the Petitioner leave to amend, the Court will now address whether an evidentiary hearing is warranted. Unless a Section 2255 motion and the files and records of the case conclusively show that a prisoner is not entitled to relief, the Court "shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Winthrop-Redin*, 767 F.3d at 1216 (quoting § 2255(b)). A petitioner is entitled to an evidentiary hearing if he alleges "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* (quoting *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002)).

As discussed in the Indiciative Ruling, the Court's review of the record reveals that, despite a thorough plea colloquy, the Court failed to advise the Petitioner of the immigration consequences of pleading guilty. (*See* D.E. 33 at 3.) Accordingly, the Court finds that an

evidentiary hearing is warranted to determine whether the Petitioner's counsel advised the Petitioner of the immigration consequences of pleading guilty.

## CONCLUSION

For all these reasons, it is

**ADJUDGED** as follows:

(1) The Petitioner's Objections to the Report and Recommendation **(D.E. 16)** are **OVERRULED**;

(2) No certificate of appealability shall issue as to the denial of the Petitioner's Motion to Reopen **(D.E. 19)**;

(3) The Petitioner's Motions for Leave to Amend Motion for Certificate of Appealability **(D.E. 32)**, to Unseal Grand Jury Minutes **(D.E. 35)**, and to Compel Production of Grand Jury Material **(D.E. 36)** are **DENIED**; and

(4) The Petitioner's Memorandum of Law, construed as a Motion for Leave to Amend the Initial Section 2255 Motion **(D.E. 29)** is **GRANTED**, but only as to the claim for ineffective assistance of counsel regarding being advised of the immigration consequences of his guilty plea.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7 of March 2020.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Magistrate Judge Lisette M. Reid

Creary Vernon Kemiel Robinson
13436-104
North Lake CI
1805 W 32 Street
Inmate Mail/Parcels
Baldwin, MI 49304
<u>Pro Se</u>