UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-22208-CV-MORENO
(16-20314-CR-MORENO)
MAGISTRATE JUDGE REID

CREARY VERNON KEMIEL ROBINSON,

    Movant,

v.

UNITED STATES,

    Respondent.

## REPORT OF MAGISTRATE JUDGE

The Court granted Movant leave to amend his Motion to Vacate filed pursuant to 28 U.S.C. § 2255 so that he could allege a claim that trial counsel ineffectively failed to advise him of the immigration consequences of pleading guilty. [Cv-ECF No. 38 at 15–16]. The Court further referred this matter to the Undersigned to hold an evidentiary hearing on this claim. [Cv-ECF Nos. 39, 50]. An evidentiary hearing was held.

Upon consideration of the testimony and evidence presented at the evidentiary hearing, and reviewing the record of the case, and the governing authorities, the Undersigned recommends that the Amended Motion to Vacate be DENIED.

### I.    Background

A.    <u>Factual Background</u>

In June 2015, law enforcement officers went to an apartment in Hialeah to execute a search warrant. [Cr-ECF No. 36 at 1]. When Movant exited the apartment, the officers searched him and recovered a half-pound bag of marijuana and a loaded Glock 27 handgun. [*Id.*]. Upon searching

the apartment, the officers found: two ziplocked bags of ethylone weighing approximately 300 grams; four small plastic bags containing approximately ten grams of cocaine; about nine plastic bags containing approximately four pounds of marijuana; approximately $1,185 in cash; and a second loaded Glock 27 handgun. [*Id.* at 1–2].

B.   Procedural Background – Movant's Underlying Criminal Case

Movant was charged by indictment with: being a felon in possession of firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3). [Cr-ECF No. 1].

Movant pleaded guilty to the § 924(c) charge in Count 3 without a plea agreement. [Cr-ECF No. 48 at 5–6, 24–25]. The remaining Counts 1 and 2 were dismissed. [*Id.* at 5, 7; Cr-ECF No. 49 at 17]. In a signed Factual Proffer, Movant agreed that the proffered facts establish beyond a reasonable doubt that he had knowingly possessed the two firearms in furtherance of the charged drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i). [Cr-ECF No. 36].

Also, relevant here, at the change of plea hearing, Movant stated that he was "happy" with counsel's representation and had discussed "everything about [the] case" with him. [Cr-ECF No. 48 at 11, 19]. This "everything" included "possible defenses, the consequences of [his] guilty plea, . . . [and] what could happen in State court . . . [and] Federal court." [*Id.*]. However, the Court did not advise Movant that pleading guilty could result in immigration consequences.[1]

---

[1] While the failure of the Court failure to advise Movant of the immigration consequences of a proposed guilty plea may violate Fed. R. Crim. P. 11(b)(1)(O), it is not clear that such a claim would even be cognizable on collateral review. Further, Movant did not raise such a claim, and even if he did, it would be procedurally defaulted because he failed to raise it on direct appeal.

2

The guideline sentencing range was five years, which the Court imposed. [Cr-ECF No. 49 at 4, 16]. At sentencing, Movant acknowledged that he "gave up the right to appeal" and stated that he was "satisfied" with his lawyer and did not "wish to appeal the sentence." [*Id.* at 19].

C.  Procedural Background – Motion to Vacate

Movant filed his original Motion to Vacate pursuant to 28 U.S.C. § 2255 alleging that counsel had ineffectively induced him to plead guilty and failed to locate favorable witnesses. [Cr-ECF No. 12 at 5–6]. The previously assigned Magistrate Judge recommended that the Motion be denied. [Cv-ECF No. 12]. Movant did not initially object and the Court adopted the Recommendation. [Cv-ECF Nos. 13–14].

After the Court closed the case, Movant filed Objections. [Cv-ECF No. 16]. He also filed a Motion to Reopen the case. [Cv-ECF No. 19]. The Court denied the Motion to Reopen. [Cv-ECF No. 20]. Movant appealed. [Cv-ECF Nos. 21, 27]. The Eleventh Circuit Ordered a limited remand for a District Court determination on whether a certificate of appealability should issue. [Cv-ECF No. 28]. At that time, Movant filed a Motion for Leave to Amend his § 2255 Motion. [Cv-ECF No. 29]. He sought to "supplement his § 2255 Motion with the additional Sixth-Amendment claim . . . for his counsel's [alleged] failure to advise [him] of the deportation possibility prior to entering a guilty plea." [*Id.* at 5].

In the Motion to Amend, Movant alleged: "Attorney Gary Rosenberg did not explain nor review with [him] the repercussions that pleading guilty would affect his immigration consequences [sic]." [*Id.* at 14]. Further, he alleged: "The District Court did not advise [him] that by pleading guilty, he would face deportation proceedings, or that [] pleading guilty could/would affect his deportation." [*Id.*]. He added that, had counsel so advised him, he would not have pleaded guilty and would have gone to trial. [*Id.*].

3

The Court issued a ruling asking the Eleventh Circuit to relinquish jurisdiction so the Court could consider Movant's timely filed Objections to the Magistrate Judge's Report and to review Movant's request to amend his § 2255 Motion. [Cv-ECF No. 33]. The Court further stated that it was inclined to grant the Motion to Amend because it had failed to advise Movant of the immigration consequences of pleading guilty, as mentioned previously. [*Id.*]

After the Eleventh Circuit relinquished jurisdiction, the Court issued an Order overruling Movant's Objections to the Magistrate Judge's Report but granted the Motion to Amend. [Cv-ECF No. 37; No. 38 at 2]. Thus, at this time, Movant's claim that counsel ineffectively failed to advise him of the immigration consequences of pleading guilty is the only remaining claim.

The Undersigned appointed Michael G. Smith to represent Movant at the evidentiary hearing regarding the remaining claim. [Cv-ECF No. 40 at 2]. Movant filed a pre-hearing narrative statement. [Cv-ECF No. 48]. He alleged that Attorney Rosenberg visited him only once before he was brought to the Court to plead guilty and pressured him to plead guilty. [*Id.* at 4–5]. He further alleged that Rosenberg met with him at his prison shortly after his change-of-plea hearing. [*Id.* at 5]. At that meeting, Rosenberg allegedly told him

> not to worry about anything, that although [he] was a Jamaican citizen, [he] had United States citizen children and a citizen wife and had lived, worked and paid taxes in this county for over 30 years. [Counsel] assured [him that] President Trump would not still be in office when [he] completed [his] sentence and thus [he] had nothing to worry about.

[*Id.* at 5–6].

D.  Evidentiary Hearing

At the evidentiary hearing, Movant and his wife, Vanessa Robinson, testified on Movant's behalf. Rosenberg testified for the Government.

1.  *Legal Standard for Credibility Determinations*

4

Credibility determinations of witness testimony in a § 2255 proceeding are generally made by "weigh[ing] the testimony of all of the witnesses, taking into account relevant factors such as their interests in the case, the consistency or inconsistency of their testimony, and their demeanor on the stand[.]" *Rizo v. United States*, 662 F. App'x 901, 912 (11th Cir. 2016) (*per curiam*) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 (11th Cir. 2002)); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (stating that demeanor, vocal inflection, the consistency or inconsistency of testimony, and the internal plausibility or implausibility of testimony are relevant considerations when determining witness credibility).

### 2.   *Relevant Testimony*

For background, Movant was indicted in May 2016. [Cr-ECF No. 1]. Rosenberg entered an appearance on June 26, 2016. [Cr-ECF No. 8]. At the hearing, Movant testified that Rosenberg met him at the prison in late July 2016 and advised him to plead guilty to the firearm charge. Otherwise, he could receive a 30-year sentence. Further, Movant testified that Rosenberg next saw him at the August 15, 2016 change-of-plea hearing and pressured him to plead guilty because doing so was in his best interest. Rosenberg allegedly did not tell Movant at either meeting that pleading guilty could result in immigration consequences.

Additionally, Movant testified that Rosenberg went to see him a couple days after he the change-of-plea hearing. Movant asked him if pleading guilty would entail immigration consequences and Rosenberg then assured him that it would not, partly because President Trump would be "out that chair by the time [his] sentence [was] finished."

Movant testified that he next saw Rosenberg at his October 18, 2016 sentencing hearing. Rosenberg reviewed his Presentence Investigation Report ("PSI") with him and told him not to worry because the Government was going to recommend that he receive a 5-year sentence.

Movant also testified that Rosenberg met with him at the prison a week or two after the sentencing hearing and gave him the PSI and other case-related documents. Later, Movant read the documents and noted that the PSI said that he had to surrender to immigration authorities at the end of his sentence. This is when Movant claims he first learned that his conviction could entail immigration consequences. Eventually, Movant was transferred to an immigration detention facility in August 2018. His counselor told him that he would be deported because his conviction was an aggravated felony.

Mrs. Robinson testified that, after Movant told her that he was subject to deportation for his § 924(c) conviction, she called Rosenberg. He allegedly assured her that Movant would not be deported because: (1) he was a U.S. citizen; and (2) President Trump would be out of office when Movant completed his sentence. Further, she testified that this was the first time that Rosenberg notified her about Movant's potential for removal.

For the Government, Rosenberg testified that: (1) he had been an attorney since 1982 and had practiced primarily criminal law; (2) he had worked for the state of Florida and the United States as a prosecutor; (3) he had been a partner in charge of the white collar section of a large law firm; (4) he later started his own firm and then his own solo practice; (5) he had represented approximately 1,000 defendants and handled close to 100 trials as a criminal defense attorney; (6) twenty-five percent of these cases involved non-U.S. citizens; and (7) his general practice is to tell non-citizens who plead guilty to or are convicted of a felony that the conviction may affect their immigration status in the United States and that they would have to consult an immigration attorney if they wanted more information in this regard.

A couple of days before June 12, 2016, Rosenberg met with Movant and his wife at his office on Movant's request. Rosenberg told him then that a felony conviction may lead to

deportation. Further, Rosenberg told him that he did not know if having a wife and children in the United States would affect his immigration status and that he should contact an immigration lawyer if he wanted more information in this regard. Rosenberg took notes at this meeting. Pertinently, the first words in his notes state "Jamaica" and "U.S. citizen—no." [Cv-ECF No. 52-3 at 1].

On June 12, 2016, Rosenberg entered a notice of temporary appearance to represent Movant in connection with his self-surrender. [Cv-ECF No. 52-1]. On June 26, 2016, Rosenberg entered a permanent appearance after payment of his fee was finalized. [Cv-ECF No. 52-2]. Rosenberg testified that he met with Movant times several after that to prepare for arraignment, review discovery, and to discuss the Government's 5-year plea offer.

Before sentencing, Rosenberg testified that he reviewed the PSI with Movant. Rosenberg noted that PSI mentioned Movant's immigration status and they discussed "the fact that his plea could affect his immigration status." He added that he did not know if Movant would be able to stay in the United States because he had a wife and children and advised movant that he needed to talk to an immigration lawyer.

### 3.  *Credibility Determination*

Rosenberg's testimony was credible. Based on his extensive experience defending non-U.S. citizens, his coherent testimony, and steady demeanor, the Undersigned finds credible his testimony that his general practice was to advise non-citizens that felony convictions may have immigration consequences. Furthermore, the contemporaneous notes of his initial meeting with Movant corroborate his testimony that he discussed Movant's status as an immigrant and the possible immigration consequences of pleading guilty at that meeting. [Cv-ECF No. 52-3].

Movant's testimony was not credible. He testified that he first learned that he would be deported in August 2018. However, Movant did not file his Motion to Amend raising the claim at

issue until August 2019. If, as Movant contends, Rosenberg repeatedly assured him that pleading guilty would not affect his immigration status, it strains credibility that he would have waited a year to file this Motion.

Movant could not plausibly explain at the hearing why he waited so long to file the Motion to Amend. When asked, he stated that his appeal of the Order denying his initial § 2255 Motion was pending at that time. It is true that he filed an appeal in August 2018. *See generally Robinson v. United States*, No. 18-13346-K (11th Cir. 2018). However, there he asked the Eleventh Circuit to grant a certificate of appealability on unrelated grounds. Furthermore, for unrelated reasons, the Eleventh Circuit remanded the case in April 2019. [Cv-ECF No. 28]. Still, Movant waited more than three months to file this Motion to Amend. Therefore, Movant's explanation was unpersuasive and appeared to be a post hac justification.

Furthermore, Movant's and Mrs. Robinson's testimony that Rosenberg told them that Movant would not be deported because President Trump would no longer be in office when he finished serving his sentence severely damaged their credibility and seemed contrived. Considering Rosenberg's extensive experience as a criminal defense attorney, it is implausible that he would have made such a statement. Moreover, Movant did not raise this allegation in his Motion to Amend; he raised it for the first time in his pretrial narrative statement. [Cv-ECF No. 48 at 6]. Movant could not provide a reasonable explanation for this delay.[2]

## II. Discussion

"To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense." *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020) (citation omitted). "For deficient

---

[2] Additionally, due to her unsteady demeanor and labored mental effort, it was evident to the Undersigned that Mrs. Robinson was manufacturing key aspects of her testimony to buttress the Movant's pretrial narrative statement.

performance, a petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness." *Id.* (citation omitted).

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), "the Supreme Court held that the . . . right to effective assistance of counsel requires counsel to 'inform her client whether his plea carries a risk of deportation.'" *Martin*, 949 F.3d at 667 (quoting *Padilla*, 559 U.S. at 374). "Immigration law is complex, and 'when the law is not succinct and straightforward, a criminal defense attorney need do no more than advise a noncitizen that pending criminal charges may carry a risk of adverse immigration consequences.'" *Id.* (alterations adopted) (quoting *Padilla*, 559 U.S. at 369). "'But when the deportation consequence is truly clear,' counsel has a 'duty to give correct advice.'" *Id.* (quoting *Padilla*, 559 U.S. at 369).

"And for prejudice, a petitioner must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Padilla*, 559 U.S. at 366). "In the context of a guilty plea, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citation omitted). Specifically, "a convict may prove prejudice for an ineffective-assistance claim based on counsel's erroneous advice about removal consequences if he establishes a reasonable probability that he would not have pleaded guilty had he known it would lead to mandatory removal." *Gonzalez v. United States*, 981 F.3d 845, 849 (11th Cir. 2020) (citing *Lee v. United States*, 582 U.S. ___, 137 S. Ct. 1962, 1969 (2017)).

Here, Movant's claim lacks merit and fail at every stage of the inquiry. The evidence shows that Rosenberg complied with his duty under *Padilla* by telling Movant that: (1) pleading guilty to a felony could result in deportation and; (2) he should contact an immigration lawyer if he wanted information regarding whether he would be able to stay in the United States due to his family

9

situation. Movant's claims that he did not have discussion with counsel regarding his immigration status and possible deportation prior to pleading guilty are not credible.

Further, Movant has not shown that Rosenberg had a duty to give any more specific advice because he has not shown that deportation was a "truly clear" consequence of his § 924(c)(1)(A)(i) conviction. *See Padilla*, 559 U.S. at 369. Movant was given an opportunity to do so at the hearing, and even now with the benefit of hindsight, the parties and the Undersigned are unable to point to a single case that holds that a § 924(c)(1)(A)(i) conviction is an "aggravated felony" that subjects a defendant to mandatory deportation under 8 U.S.C. § 1227. Thus, even if a court were to later hold that it was an aggravated felony, at the time counsel advised Movant that deportation was possible (as opposed to advising him that it was mandatory), it was not "truly clear" he would be deported. In fact, it was quite unclear, and it remains unclear now. Thus, counsel was not deficient.

Finally, even if counsel's performance was deficient, Movant cannot show prejudice. Rosenberg credibly testified that he notified Movant that pleading guilty could result in deportation. Movant's statements to the contrary are simply unpersuasive. While it is not known exactly what advice was given, the evidence clearly indicates that Movant was aware of the possibility of deportation as a result of his guilty plea, and that he decided to plead guilty despite knowing he could be deported. Thus, even assuming Rosenberg's advice was deficient, Movant fails to meet his burden to show a reasonable probability that he would not have pleaded guilty if he had a better understanding of the mathematical probability that doing so would have led to his removal.

### III.    Conclusion

As discussed above, it is RECOMMENDED that the Amended Motion to Vacate [Cv-ECF No. 29] be DENIED, that a certificate of appealability be DENIED, and the case CLOSED.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

SIGNED this 10th day of March, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Michael Gary Smith
633 South Andrews Avenue
Suite 500
Fort Lauderdale, FL 33301
954-761-7201
Fax: 764-2443
Email: smithlawdefend@aol.com

Arimentha R. Walkins
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9091
Fax: 305-536-7599
Email: arimentha.walkins@usdoj.gov

Diana Margarita Acosta
United States Attorney's Office
101 South U.S. Hwy 1
Suite 3100
Fort Pierce, FL 34950
772-293-0981
Fax: 772-466-1020
Email: diana.acosta@usdoj.gov

Noticing 2255 US Attorney
Email: usafls-2255@usdoj.gov